**MOORE, Mayor et v KING**

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 31, 1933

Vern Thomas, Youngstown, for plaintiff in error.

Osborne & Lewis, Youngstown, for defendant in error.

POLLOCK, J.

The real questions to be decided in this case and the ones presented to this court, regardless of what may be stated in the pleadings, are first, was the defendant in error in the classified service and protected under the rules of that service, and second, was his dismissal in good faith. It is said that he was dismissed on the ground of economy, or on the ground that the finances of the city were not sufficient to continue his employment, and it is not contended but what if that was the case his dismissal was legal.

It appears from the evidence that Mr. King entered the service of the City of Youngstown in the engineering department in 1897 and continued until 1916, when he voluntarily left the service of the city and remained out of the service of the city until in November of 1918, when he again became an employe of the city. §4368 GC provides that the director of public service of the city shall also be a platting commissioner, and also what shall be done by him as platting commissioner. The next section provides for his employment of engineers and such assistants as he finds necessary and fixes their salary within the limits provided by the city for compensation of such engineers and assistants. On the 26th of August of that year, 1918, the council of the City of Youngstown provided for the appointment of employes and assistant engineers in the platting commission and fixed the salary that the director of public service might pay therefor. Nothing appears in the record, so far as we are able to determine, who employed or in what position Mr. King was placed in November, 1918, except that it appears that he received the salary provided by this ordinance for the assistant platting engineer, and he no doubt did go into that employment and continued in that employment until the 10th day of April, 1920, when by ordinance the city of Youngstown provided for a planning commission of seven persons. The mayor and the commissioner of engineering and some other officials and citizens, making seven persons, form the planning commission. The duties of such a commission were provided by §3466-2 GC. The word itself probably conveys enough infor-

mation as to what their duties were without any further discussion of that subject. §3466-5 GC provides that this commission shall have the power to control, appoint or employ such architects, engineers and other professional services and to appoint such clerks, assistant engineers, etc., as may be necessary. In other words, the commission had power to control, appoint and employ their assistants. After the passage of this ordinance Mr. King became the assistant engineer under the planning commission.

There is a question raised whether or not he became that by appointment of the commisison or whether the commissioner only controlled him or he was appointed by the commission. There is no written record of how Mr. King became the assistant engineer of the planning commission. About the only thing we have is that it appears by an ordinance passed by council of the city of Youngstown on the 25th day of April, 1921, that the city had failed in the former ordinance to provide for the payment of an assistant engineer or any assistants in this office, and in order to correct and pay Mr. King for the services the council passed an ordinance and it recited that:

"Whereas said planning commission at the time of its organization on or about June 25th, 1920, employed Singleton A. King as assistant planning engineer, and attempted to fix the salary therefor at $250.00 per month."

It also provided that whereas no salary ordinance was passed until several months after he had been employed by the planning commission, therefore the city corrected that injustice and paid him. That is the only expression as to when or how Mr. King became the assistant engineer under the planning commission, that he was employed by the planning commission. Without reciting the further facts, we think without question he continued in that position until the 1st of January, 1924, when the city became a charter city, and his position and the character in which he was employed then comes under the rules and conditions of the charter of the city of Youngstown.

It might be stated that he continued on in the service of the city of Youngstown. §20 of the charter provides that the following administrative departments are hereby created: The Department of Law, the Department of Finance, the Department of Public Works, the Department of Health

and Public Welfare. We need not refer to anything further than this, because the conditions or facts involved in this case are around the question of the Department of Public Works. The next section provides that the mayor shall be ex-officio Director of the Department of Public Works. The charter also provides that the Department of Public Works shall consist of the following divisions:

1. Engineering, construction, maintenance and repair.
2. Public buildings and grounds.
3. Parks and public playgrounds.
4. Building, plumbing and wiring inspection.

"The division of engineering, construction, maintenance and repairs, shall be in charge of a commissioner of engineering, who shall be the chief engineer of the city, and shall be the deputy director of public works."

After providing for these departments under the provisions of §85 of the charter, the city provides for a planning commission:

"There is hereby created a city planning commission, composed of seven members, consisting of the mayor, the city solicitor, commissioner of engineering, commissioner of parks and public playgrounds, and three citizens, at least one of whom shall be a woman, to be appointed by the mayor for terms of four years each.

The mayor shall be chairman of the commission, and the commissioner of engineering shall be the chief engineer and secretary thereof.

The commission shall possess the powers and perform the duties prescribed for planning commissions by the General Code."

Mr. King, after adoption of the charter, continued so far as we can gather, from the exhibits and evidence, to act in the same capacity as he had acted prior to the charter under the planning commission, as assistant engineer, or at least this continued until the 1st of January, 1924. The question also arises whether or not Mr. King after the charter was adopted was under civil service or in the classified list or unclassified list. He testifies he never took a civil service examination and that his appointment prior to the charter was not made out of the classified list. §63 of the charter provides:

"All persons holding positions in the classified service of the city pursuant to appointment from eligible lists at the time this charter takes effect, or who have been continuously in the service of the city in the same position for five years next preceding, shall retain their positions, or any similar positions created by this charter until discharged, reduced, promoted or transferred in accordance with the provisions hereof."

Mr. King had been in the service of the city continually for more than five years prior to January 1, 1924, in as we think practically the same position. The commission was changed from Platting to Planning Commission. We think Mr. King came under the provisions of this section 43 of the charter and that this section placed the employes who had been employes of the city for five or more years before January 1, 1924, in the classified service under the charter, unless it was some service which was not classified, and that is provided, whether classified or unclassified, by §52 of the charter:

"The civil service of the city is hereby divided into classified and unclassified service."

The section notes some six or eight divisions or conditions of employes who are in the unclassified service, and the remainder of the employes of the city are in the classified service. Without stopping to read these unclassified service provisions, it is certain that Mr. King did not come under any of these unclassified divisions, but that he is and was from the time of the adoption of the charter in the classified service of the city and entitled to the protection of the employes in that service. As we have said, it appears that he was employed and working as assistant engineer under the planning commission and continued at least until the 1st of January, 1931. The charter provides that every six months there should be passed by the council of the city of Youngstown 'an appropriation ordinance, setting out what will be the necessary expenditures, or, in other words, the familiar word now is the budget, for the next six months. The budget, of course, or the data for the budget is prepared by the heads of the different departments. Up until the first of January, 1931, there had been furnished by the commissioner of engineering, certain assistant engineers, and providing the amount of their payment, or what they

had been paid, and also there had been provided for at least one and sometimes two assistant engineers, noted planning engineers, and also a zoning commission. In the ordinance passed by the commission fixing the appropriation from January 1, 1931, a change was made in the appropriation in this regard. There was probably one, if not two, assistant engineers noted more than in the former appropriation and for at least one of those the salary fixed was exactly the salary that Mr. King had been receiving prior to that time. There was no assistant engineer of the planning commission noted in that ordinance, but there was one zoning commissioser. That ordinance was adopted by council. The prior ordinance was repealed. We presume the prior ordinance was repealed the first of January every year. In the appropriation ordinance adopted in June of that year the same thing occurred. There is some claim that whatever Mr. King may have been prior to the 1st of January, 1931, he was placed in the engineering department on the first of January, 1931. It is the commission that has a right to employ the assistant engineer under the planning commission. That was provided by statute, or rather the charter followed the statute in that regard. The city claimed as there was no provision for placing the employes of the planning commission under the statute under civil service, that Mr. King never was under civil service; that he was still employed under the Code by the planning commission and could be discharged or removed at any time. We do not think that such is the case. We think that the charter controlled the civil service employes from the time of its adoption, so that under the charter Mr. King was with the planning commission, yet he was under civil service. We do not think that a change in the manner of making the appropriation fixing the amount of money that should be spent during the six months beginning in 1931 changed his relation with the commission, or his employment. We think Mr. King continued under the planning commission.

It is urged that there is evidence tending to show that Mr. Turner was the commissioner of engineering during all the time after January 1, 1924, that Mr. King received his orders from Mr. Turner. Mr. Turner testified that Mr. King did whatever he told him to do but that he was working under the planning commission during that time. The engineering department, public works department and those under the control of Mr. Turner were all very closely associated and related in their work; in fact, their work over-lapped in some particulars, yet we think Mr. King was still under the planning commission and that the mere change in the designation of the budget did not change his relation.

It is urged by the city that if he was under the planning commission, in the employ of the planning commission, that there is no evidence but that there was good faith in relieving Mr. King from his employment. We think that to place the right to discharge Mr. King on that ground would be placing his discharge on very technical grounds, at least.

It is urged in the presentation of this case that the mayor, the commissioner of engineering, had about the time that Mr. King was relieved on the ground of economy, employed additional assistant engineers, that they employed, possibly on the 11th, the day before Mr. King received this letter, Mr. Conquest, and gave him the title of assistant engineer and placed him in the assessment department, as an assistant in that department, and about a month afterwards employed Mr. Kane and gave him the title of assistant engineer and placed him in charge of some public works that the city was then engaged in to furnish employment for the unemployed, such as improvements on the streets and some other work, and that Mr. King should have been given one of these places.

We hardly think that Mr. King was employed in just the same situation as the two new employes were. As we have said, Mr. King was an employe of the planning commission, and Mr. King claims that the employment of the other two parties as assistant engineers sustains his claim that the grounds stated for his discharge were not made in good faith. The employment of the new employes is not a question before this court, except as it reflects upon the good faith of the mayor and commissioner of public works in relieving Mr. King of his employment.

The charter gives the mayor and the engineer the control of the employment of assistant engineers in the engineering division and to control the discharge or the release of employes under the classified service in that division. It is not questioned but what if the finances of the city were such that there should be a retrenchment and saving that the mayor and the commissioner of engineering had the power and right to discharge Mr. King, even if protected by civil service, but it is also claimed

and not denied that it had to be done in good faith, and further there is no claim made but what the condition of the finances of the city justified and required as much economy as possible. We have Mr. King relieved from this position as assistant engineer to the planning commission. No one was placed in his position. It is admitted that these other two were placed in the engineering division and denominated assistant engineers, yet no one was placed in Mr. King's position, and while we think he might have been transferred into the other departments, yet the mayor and the engineer did not see fit to do so, and it must appear, before a court should interfere, that they did not act in good faith in his removal.

This court has come to the conclusion that there is not sufficient evidence to show that these officials did not act in good faith in the removal, and the judgment of the court below is reversed and the case remanded.

FARR and ROBERTS, JJ, concur in the judgment.